■ In the Matter of PATRICIA E. CHAPIN, Petitioner, v ALAN G. HEVESI, as State Comptroller, Respondent. [774 NYS2d 610]—

Crew III, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which denied petitioner's application for performance of duty disability retirement benefits.

Petitioner, a correction officer, applied for performance of duty disability retirement benefits alleging that her exposure to chemical agents used by inmates to strip the facility's floors rendered her permanently incapacitated from the performance of her duties. Following the initial disapproval of her application, petitioner sought and obtained a hearing and redetermination. Ultimately, respondent upheld the Hearing Officer's denial of petitioner's application, concluding that petitioner failed to establish that she was permanently incapacitated from the performance of her duties as a correction officer. Petitioner thereafter commenced this proceeding pursuant to CPLR article 78 seeking to annul respondent's determination.

Petitioner primarily contends that respondent's determination is not supported by substantial evidence. We agree. Sherif

El Bayadi, petitioner's treating physician and a board-certified pulmonologist, testified that petitioner suffered from reactive airways dysfunction syndrome, a form of asthma, and opined that her exposure to floor stripping chemicals at the facility where she worked was the competent producing cause of her condition. Based upon the history provided by petitioner, who denied any prior respiratory ailments, his physical examination of petitioner and the results of her pulmonary function tests, El Bayadi concluded that petitioner's affliction rendered her permanently incapacitated from performing the duties of a correction officer, including running down a hallway in response to a call for assistance or restraining an inmate.

In response, Robert Kaplan, the pulmonologist testifying on behalf of the New York State and Local Employees' Retirement System, agreed that petitioner indeed suffered from asthma, but was unable to express an opinion as to the cause thereof. Kaplan further stated that he believed petitioner was able to return to work, but he cautioned that petitioner should avoid further exposure to cold, floor strippers and other chemicals, all of which were identified as triggers for her asthma. In this regard, Kaplan acknowledged that his conclusion regarding petitioner's fitness to return to her duties was premised upon an assumption that she could avoid such future exposures, and he conceded that if petitioner were exposed to chemical agents at work, she would be incapable of performing the duties of her employment.

Inasmuch as El Bayadi and Kaplan agreed that petitioner needed to avoid the very agents that produced her respiratory distress, the issue essentially distilled to whether petitioner could resume her duties as a correction officer and avoid exposure to cold, floor strippers and other chemical agents. In this regard, petitioner testified at length regarding the customary duties of a correction officer, including assisting other correction officers in restraining, chasing or grappling with problematic inmates—physically challenging tasks that she testified she no longer can perform due to shortness of breath upon exertion. Additionally, even a cursory review of petitioner's testimony reveals that many of the customary duties of a correction officer placed petitioner in close proximity to a variety of chemical agents. Notably, following petitioner's initial exposure in 1995, she successfully bid on an assignment outside the general inmate population in an apparent attempt to minimize or avoid exposure to potential irritants. Despite this precautionary measure, petitioner, during the normal course of her duties, again was exposed to floor stripping chemicals and suffered a second work-related incident in 1996.

In light of the undisputed medical testimony that petitioner must avoid, inter alia, floor stripping materials and other chemical agents, and given petitioner's uncontroverted testimony as to the duties of a correction officer and the potential for her exposure to those very agents, we conclude that respondent's determination cannot stand. Simply stated, viewed in the context of the entire record, Kaplan's testimony regarding petitioner's ability to return to work is insufficient to support respondent's finding that petitioner is not permanently incapacitated from the performance of her duties.

Cardona, P.J., Mercure, Carpinello and Mugglin, JJ., concur. Adjudged that the determination is annulled, without costs, petition granted and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.